James W. McQUERRY,
Plaintiff–Appellant,

v.

UNITED STATES PAROLE COMMISSION, Defendant–Appellee.

No. 91–55536.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 4, 1992 *.

Decided April 13, 1992.

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App.P. 34(a); 9th Cir.R. 34–4.

James W. McQuerry, pro se.

C. Michael Zweiback, Asst. U.S. Atty., Los Angeles, Cal., for defendant-appellee.

Before: ALARCON, BEEZER and RYMER, Circuit Judges.

RYMER, Circuit Judge:

McQuerry is a federal prisoner. Following his conviction for distribution of cocaine, McQuerry was sentenced to a term of five years in prison and five years on special parole. His special parole was revoked twice. Both times, the United States Parole Commission credited all of McQuerry's "street time." McQuerry got into more trouble and eventually received a new sentence on a new marijuana distribution charge, to begin on the day after his release on the special parole violator term. After the date of his presumptive release on that term, however, the Commission reopened McQuerry's case because it had erroneously credited the time spent on special parole. The Commission then modified previous orders to reflect that none of the time spent on special parole was to be credited. McQuerry, pro se, filed a 28 U.S.C. § 2241 petition for habeas relief, which the district court dismissed.

McQuerry mounts a number of challenges to the Commission's authority to revoke street time credits once granted, and contends that it lacked jurisdiction to reopen his case for that purpose after his presumptive parole date had passed. He also argues that his rights to due process were violated when the Commission forfeited street time under 21 U.S.C. § 841(c), contrary to its previous practice and to 18 U.S.C. § 4210(b)(2), which was enacted later as part of the Parole Commission and Reorganization Act of 1976.[1] We hold that 21 U.S.C. § 841(c), which provides that a new term of imprisonment for violating special parole may not be decreased by the time spent on special parole, controls the forfeiture of street time for drug offenders. As the Fifth Circuit held in *Munguia v. United States Parole Commission*, 871 F.2d 517, 520 (5th Cir.), *cert. denied*, 493 U.S. 856, 110 S.Ct. 161, 107 L.Ed.2d 119 (1989), forfeiture of street time under § 841(c) is mandatory and nondiscretionary. We further conclude that because the Commission does not lose jurisdiction over any parolee until the maximum term for which the parolee was sentenced expires, 18 U.S.C. § 4210(b), it retains power to reopen after a presumptive parole date but before the maximum term for which the prisoner was sentenced has expired. We believe the Commission properly reopened to correct its mistake in McQuerry's case. Therefore, we affirm.

---

1. 18 U.S.C. § 4210(b) is now applicable only to sentencing for offenses committed before November 1, 1987. McQuerry's drug offense was committed prior to 1987. *See infra* note 4.

## I

The chronology is tortuous but important. McQuerry was convicted of distributing cocaine in April of 1980. He was sentenced to five years in custody with a five-year term of special parole.[2] On March 6, 1983 McQuerry was released on regular parole. His five-year special parole term would have ended on March 5, 1988, if he had behaved. He didn't.

On March 8, 1984 McQuerry violated his parole and received a violator term. That postponed the start of his special parole term until April 4, 1985. Meanwhile, he was re-paroled on June 1, 1984. On April 4, 1985 McQuerry's prison sentence terminated and the five-year special parole term began. That term, however, was revoked on September 11, 1985. All the time spent on parole, or "street time," was credited and the termination date remained April 4, 1990, the date originally set when his original, five-year prison term expired. McQuerry was re-paroled on his special parole term March 6, 1986 under a certificate which noted that his special parole term was to expire April 4, 1990.

Following several positive drug tests, the Commission again revoked McQuerry's special parole. The revocation order credited McQuerry with all the time he had spent on special parole, from March 6, 1986 to January 16, 1987. On administrative appeal, McQuerry was given a presumptive parole date of July 15, 1988, but that date was continued to November 15, 1988 on account of more problems in custody.

On July 27, 1988, McQuerry was indicted in the United States District Court for the Western District of Tennessee on charges of conspiring to distribute marijuana. Because of the indictment, the Commission reopened McQuerry's case in October, 1988 to consider rescinding the November 1988 parole date. McQuerry waived that date. On December 1, 1988, the district court in

Tennessee sentenced McQuerry to thirteen months in prison.[3] This new sentence was to begin the day following mandatory release from the special parole violator term.

By Notice of Action dated June 14, 1989, the Commission informed McQuerry that his case would be reopened for consideration of whether a special parole term violator whose parole had been revoked should receive credit for street time. The left hand apparently not knowing what the right hand was doing, the Bureau of Prisons on June 27 issued McQuerry a Certificate of Mandatory Release showing a mandatory release date from the special parole violator term of June 1, 1989. (June 1 reflects 307 good time credits as well as credit for street time.)

At the revocation hearing July 12, 1989 McQuerry argued that the Commission no longer had jurisdiction to address the matter of his special parole term. The examiner panel recommended revocation of special parole street time pursuant to 21 U.S.C. § 841(c). The Commission issued a Notice of Action on August 2, 1989 reopening McQuerry's case and modifying its previous orders "to reflect none of the time spent on special parole shall be credited." The National Appeals Board affirmed.

## II

■ This appeal turns on McQuerry's argument that the Parole Commission improperly acted to extend his special parole term by retroactively forfeiting street time after his "term" expired June 1, 1989. We hold that his term did not expire June 1, 1989, which was his presumptive release date with street time credits; rather, it did not expire until April 4, 1990.

McQuerry argues that the Commission lacked authority to revoke his street time credits because he had already been released on his old sentence and his new,

---

2. Special parole terms are imposed after a conviction for manufacturing, possessing, or distributing controlled substances. 21 U.S.C. § 841(b) (1976).

3. The government appealed this sentence to the Sixth Circuit, arguing that the district court

erred in not sentencing McQuerry as a career offender. The Sixth Circuit agreed in an unpublished decision. Upon remand, the district court resentenced McQuerry to forty-one months in prison.

consecutive sentence had begun. He reasons that 21 U.S.C. § 841(c) has no provision for termination of a sentence when the special parolee has a mandatory release date on an old conviction and a consecutive sentence on a new one, so the applicable rule must lie in 18 U.S.C. § 4210. That rule, McQuerry contends, read in conjunction with 18 U.S.C. §§ 4163, 4164, and 4211, requires release of a parolee from the jurisdiction of the Commission with credits once he is issued a mandatory release certificate. Therefore, he urges, regulations implementing § 841(c) which permit reopening to deduct street time that the Commission erroneously credited are not applicable in his case. We disagree.

We start with 21 U.S.C. § 841(c), because it governed special parolees in narcotics cases at the time of McQuerry's offense. Forfeiture of street time is mandatory under § 841(c). When special parole is revoked,

> the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment *shall not be diminished* by the time which was spent on special parole.

21 U.S.C. § 841(c) (emphasis added); *see also Bunker v. Wise,* 550 F.2d 1155, 1159 (9th Cir.1977) ("[A] special parole violator receives no credit for the time spent on parole and can be returned to prison for the entire term of the special parole.").

Section 4210 of Title 18, enacted as part of the Parole Commission and Reorganization Act of 1976, defined the Commission's jurisdiction for offenses committed before November 1, 1987.[4] Under subsection (b)(1):

> (b) Except as otherwise provided in this section, the jurisdiction of the Commission over the parolee shall terminate no later than the date of the expiration

of the maximum term or terms for which he was sentenced, except that—

> (1) such jurisdiction shall terminate at an earlier date to the extent provided under section 4164 (relating to mandatory release) or section 4211 (relating to early termination of parole supervision), . . .

Section 4164, in turn, provides that when a prisoner who has served his term less good-time deductions is released, he will be treated as if he were on parole until the maximum term expires less one hundred and eighty days.[5] Under § 4163, a prisoner is to be released at the expiration of his term of sentence less the time subtracted for good conduct. The final section upon which McQuerry relies, 18 U.S.C. § 4211, allows the Commission to terminate supervision over a parolee prior to the termination of jurisdiction under § 4210.

Regardless of whether he was on mandatory release status, as McQuerry contends he was once his presumptive release date (June 1, 1989) had arrived and a Certificate of Mandatory Release had issued (June 27, 1989), the Commission retained jurisdiction until his maximum term expired, which in his case was April 4, 1990. The Commission's August 2, 1989 Notice of Action was within that period. Therefore, unless the Certificate of Mandatory Release issued by the Bureau of Prisons divested the Parole Commission of jurisdiction it otherwise had, the Commission had the power to act on the amount of time McQuerry had to spend in prison on the special parole violator term when it reopened to forfeit credits. Nothing in §§ 4210, 4163, 4164, or 4211 indicates that a Certificate of Mandatory Release has any effect other than on the prisoner's custodial or supervisorial status.[6] The Commission thus retained jurisdiction over McQuerry as a special parolee.

---

**4.** 21 U.S.C. § 4210 was repealed by Pub.L. No. 98–473, Title II, § 218(a)(5), 98 Stat. 2027, effective November 1, 1987. Section 4210 remains applicable for ten years to those, like McQuerry, convicted of crimes committed prior to November 1, 1987. *Id.* § 235(b)(1)(A), 98 Stat. 1032; Pub.L. No. 101–650, § 316, 104 Stat. 5115.

**5.** We have already held that the provisions of 18 U.S.C. § 4164, including the 180–day limitation, are inapplicable to special parole terms. *Russie v. United States Dep't of Justice,* 708 F.2d 1445, 1447 (9th Cir.1983).

**6.** McQuerry argues that § 4210(b) equates a mandatory release with expiration of the sentence, and that time remaining on the violator

McQuerry contends, nevertheless, that the Commission should be estopped from reopening his case and forfeiting street time because the Bureau of Prisons had given him a presumptive release date of June 1, 1989. He also believes the Commission should be estopped from taking adverse action on an expired sentence after commencement of a new sentence. Neither point is persuasive.

For the government to be estopped, McQuerry must show affirmative misconduct and detrimental reliance. *See Russie v. United States Dep't of Justice,* 708 F.2d 1445, 1448–49 (9th Cir.1983). He has shown nothing more than mistake on the first prong, and nothing on the second. The Commission's practice of giving credit for street time did not comport with § 841(c); it changed its practice to conform.[7] A mistake of law is not enough to estop the government. *United States v. Harvey,* 661 F.2d 767, 774, 775 (9th Cir. 1981), *cert. denied,* 459 U.S. 833, 103 S.Ct. 74, 74 L.Ed.2d 72 (1982) (mere negligence will not constitute affirmative misconduct). Nor can McQuerry have relied to his detriment on the Certificate, because the Commission had issued the Notice of Action indicating its intent to reopen to correct McQuerry's good time credits before the Bureau of Prisons issued the Certificate of Mandatory Release, and the Certificate itself stated that McQuerry would remain under the Commission's jurisdiction until April 4, 1990. McQuerry was, in any event, still in custody and did not change his position in reliance on either the Bureau of Prisons's mistaken issuance of the Certificate, or the Commission's incorrect calculation.

In *Russie* we dealt with a similar problem. The Parole Commission filed a detainer against Russie while he was serving a state court sentence. The Commission had issued a parole violation warrant against Russie, and then mistakenly issued a notice of discharge from federal supervision. Russie contended that the Commission should be estopped from acting on the warrant issued before his state sentence had expired, and claimed that he would not have pleaded guilty to the state charge had he known that he was still on federal parole and subject to recapture. We held that even though the parole officer erred in issuing the Notice of Discharge, the mistake did not reach the level of government misconduct and Russie had not shown that he was genuinely prejudiced by the mistakenly issued discharge. 708 F.2d at 1448–49.

Likewise in this case, we cannot say that the Commission's incorrect application of § 841(c) amounts to affirmative misconduct. As in *Russie,* "[t]o apply estoppel in this case would subvert the policy of continuing supervision of drug offenders contained in 21 U.S.C. § 841 and the special parole provisions." *Id.* at 1448. While the Commission's crediting McQuerry with street time was in error, as was the Bureau of Prisons's issuing a Certificate of Mandatory Release, both were corrected before any harm, other than the longer period in custody mandated by law, occurred.[8] Re-

---

term merged with his consecutive marijuana sentence, so as to divest the Commission of jurisdiction after he began serving his consecutive new law sentence. This argument fails for the same reasons. McQuerry's term had not expired, nor would service of the new sentence begin until service on the old one ended. The Commission's reopening and correcting credits did not extend either *term;* rather, his *time in prison* on the special parole violator term under his first sentence was extended.

7. The Commission revised 28 C.F.R. § 2.57(c), effective April 20, 1989, to read: "Notwithstanding the provisions of § 2.52(c), a special parole term violator whose parole is revoked shall receive no credit for time spent on parole pursuant to 21 U.S.C. § 841(c)." 54 Fed.Reg. 11689

(1989). The notes accompanying this revision indicate that the Commission intends to reopen whenever these cases appear before it for review and to enter the deduction of credit for time spent on parole required by § 841(c). *Id.*

8. McQuerry's further argument, that his marijuana sentence may have expired before an appeal from it was resolved since both the special violator term and the consecutive marijuana sentence would have been satisfied by the mandatory release, is without foundation in the record. In any event, the mandatory release certificate on the special parole violator term attached to the first sentence would in no way apply also to the second sentence. Of course, the fact that the presumptive release date was

opening McQuerry's case and correcting the previous credit did not cause any prejudicial change of position. The district court correctly concluded under these circumstances that the Commission was not estopped to act. *See id.* at 1448–49.

### III

McQuerry argues that the Commission violated his due process rights by forfeiting street time without evidence of new criminal conduct, by incorrectly and retroactively applying the Fifth Circuit's decision in *Munguia*, 871 F.2d 517 which held that § 841(c) was not superseded by § 4210(b), and by failing to provide adequate notice and hearing. We conclude that no rights were denied.

In *Munguia*, the Parole Commission revoked Munguia's special parole because of administrative violations and, without prehearing notice of the possible penalty, applied an earlier conviction to forfeit street time. *Id.* at 518. Munguia claimed that this violated his rights to due process. Rejecting this argument, the Fifth Circuit held that forfeiture under § 841(c) "is an immediate and mandatory consequence of revocation, linked inextricably in the words of the statute with revocation itself." *Id.* at 520. It also held that § 841(c) was not superseded by 18 U.S.C. § 4210(b)(2), but continues to control the loss of street time for drug offenders. *Id.*

■ McQuerry contends that the Commission acted contrary to its own regulation in reopening his case in response to *Munguia* instead of "new information" having to do with his criminal conduct. 28 C.F.R. § 2.28(f) authorizes the Commission to reopen a case "[u]pon receipt of new and significant adverse information." McQuerry argues that new decisional authority may not properly be the impetus for reopening, and that in any event *Munguia* is distinguishable since the parolee had not been released, his sentence had not expired, and his street time was forfeited due to

new criminal conduct. He also claims that 18 U.S.C. § 4214 precludes the Commission from using old information to arrive at a different, and harsher, determination.

We defer to the Commission's interpretation of its own regulations unless the interpretation is plainly erroneous or inconsistent with the regulation. *Williams v. United States Parole Comm'n*, 707 F.2d 1060, 1063 (9th Cir.1983), *overruled on other grounds, Wallace v. Christensen*, 802 F.2d 1539, 1554 n. 10 (9th Cir.1986) (en banc). We have no difficulty with the Commission's interpretation in this case. No inconsistency arises on account of treating the discovery of error as "new information," nor could it be plainly erroneous for the Commission to correct time in prison based on a nondiscretionary statutory directive. *See McClanahan v. Mulcrome*, 636 F.2d 1190, 1191 (10th Cir.1980) (discovery of error in the severity rating and the disparity in parole decisions may be considered "new information" under former version of 28 C.F.R. § 2.28(f)). Finally, McQuerry's reliance on § 4214, which has to do with revocation of parole, is misplaced because the Commission proceedings about which he complains were simply to correct an error as to time served, not to revoke parole.

■ McQuerry argues that the Commission retroactively applied *Munguia* to increase his punishment. This argument fails for two reasons. First, the Commission did not "apply" *Munguia*; it reopened pursuant to a post–*Munguia* regulation, 28 C.F.R. § 2.57(c), and modified its prior orders to comply with § 841(c). To the extent *Munguia* had any effect, it was to call the Commission's attention to its prior error. As *Munguia* holds, forfeiture of street time for drug offenders is mandatory and ministerial. 871 F.2d at 520. Second, McQuerry's punishment had already been fixed by virtue of the special parole term to which he was sentenced. Thus, only his prison service was increased, not his punishment.

corrected to comply with § 841(c) prolonged the time spent in custody on the special parole violator term, as well as delayed the start of

McQuerry's marijuana sentence. This, however, is prejudice resulting from operation of § 841(c), not government misconduct.

Nor were McQuerry's due process rights implicated on account of the notice and hearing he received. The June 14, 1989 Notice of Action advised that the Commission would hold a hearing to consider whether street time on special parole could be credited. The hearing was held nearly a month later on July 12, 1989. McQuerry complains that it was cursory, but that is immaterial since forfeiture of street credits raised a purely legal issue. As *Munguia* holds, § 841(c) "makes plain that upon revocation a special parolee *shall* automatically lose any street time." 871 F.2d at 520. Thus, the Commission was effectively without discretion which McQuerry could inform. His notice and hearing were adequate. *See Bowen v. United States Parole Comm'n*, 805 F.2d 885, 887 (9th Cir.1986); *Vanes v. United States Parole Comm'n*, 741 F.2d 1197, 1200, 1202 (9th Cir.1984).

To the extent that McQuerry contends that *Munguia* was incorrectly decided and neither the Commission nor this circuit should follow it, we disagree. The Fifth Circuit's conclusion that the enactment of § 4210 does not affect the substantive terms of § 841(c) which control the loss of street time for drug offenders is well founded in the text of the two sections as well as their legislative history. *See Munguia*, 871 F.2d at 520.

## IV

McQuerry argues that the Parole Commission lacked authority to run his new law sentence consecutive to his old law sentence. As we understand it, his point is that the Commission's forfeiture of street time caused him to serve time on an expired special parole term at the same time he had begun serving his consecutive marijuana sentence. We have already held that his special parole term had not expired. In any event, McQuerry would not have begun serving the sentence on his new conviction until he served out the remainder of his time, as corrected, on the special parole

term.[9] McQuerry also suggests that the sentencing court on the marijuana conviction would not have ordered that sentence to be served consecutively had it known the Commission would forfeit street time. No basis appears for this kind of speculation.

## V

We have considered McQuerry's remaining arguments, but they lack merit. Accordingly, we affirm.

**AFFIRMED.**

---

**9.** We do not have before us any question about when the Commission figures McQuerry started to serve his consecutive sentence. Any problem

on that score should be vented before the Commission.